No. 19,915.

OTIS CHARLES TRUEBLOOD v. HARRY C. TINSLEY, WARDEN.

(366 P. [2d] 655)

Decided December 4, 1961. Rehearing denied December 26, 1961.

504

Mr. SAMUEL D. MENIN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

FIVE reasons are urged for the reversal of the "order and judgment" of the trial court entered against the petitioner Trueblood in habeas corpus proceedings. We shall consider these reasons seriatim.

1. "The judgment and sentence was not within statutory limitations in that petitioner was not subject to the so-called sex offenders act." To support this contention Trueblood theorizes that the evidence fails to bring him within the purview of C.R.S. '53, 39-19-1 et seq., 1960

Perm. Cum. Supp., providing for sentencing sex offenders, and therefore any sentence which the trial court might have imposed ought to have been laid upon him pursuant to C.R.S. '53, 40-2-32.

Sex offenders within the meaning of C.R.S. '53, 39-19-1 et seq., 1960 Perm. Cum. Supp., may be sentenced "to a state institution for an indeterminate term having a minimum of one day and a maximum of his natural life." Those who offend against C.R.S. '53, 40-2-32, providing for punishment of persons who take indecent and improper liberties with the person of a child, may, if over eighteen years of age, be confined "in the penitentiary for a term of not more than ten years."

On June 9, 1958, Trueblood was sentenced to the Colorado State Penitentiary for a "period not exceeding life and not less than one day (1 day)." Prior to the imposition of sentence, the trial court had had Trueblood examined psychiatrically and had before it the psychiatric report.

Out of this report Trueblood draws encouragement for his position that C.R.S. '53, 39-19-1, et seq., 1960 Perm. Cum. Supp., is inapplicable to his misdeed. From statements by the doctor that he showed "no evidence of thinking disorder" and that he "is not mentally deficient," and the absence of statements that he constituted a threat of bodily harm to the public or that he is an habitual offender, Trueblood claims that he falls without the pale of the provisions for sentencing sex offenders.

The applicable section in part reads:

"For the better administration of justice and the more efficient control, treatment and rehabilitation of persons convicted of * * * indecent liberties * * * if the district court is of the opinion that any such person, if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill, the district court in lieu of the sentence now provided by law, for each such crime, may sentence such person to a state institution for an indeterminate term. . . ."

 Assuming that the psychiatric report could be interpreted in the favorable manner proposed by Trueblood, it would not necessarily be binding upon the trial court. To hold otherwise would empower the psychiatrist to impose the sentence through his report. It was not intended that the psychiatrist thus become vicariously the judge under the statute, or otherwise limit or restrict the court in the exercise of its judgment. The words, "if the district court is of the opinion that any person, if at large, constitutes a threat of bodily harm to members of the public," and so forth, contained in the statute, leave Trueblood's argument in this respect bereft of substance.

Indeed, the psychiatric report is not the sole gauge by which to determine the character of the sentence. The trial court should consider all material matter before it which will aid in the formation of a proper "opinion." This the trial court did. Without detailing the matters considered, we merely say that information supplied to the court from the probation report and other sources supported its disposition of the case. The present trial court, in determining the habeas corpus matter, took these things into account and properly refused to disturb the sentence imposed.

2. "The judgment and sentence was not within statutory limitations in that the trial judge was without authority to sentence petitioner to the penitentiary. Having done so it was the duty of the parole board to transfer petitioner."

To better understand Trueblood's theory of the duty of the parole board we must consider in connection with C.R.S. '53, 39-19-1 et seq., 1960 Perm. Cum. Supp., quoted above, 39-19-6 (2) thereof. It provides:

"The state board of parole is hereby empowered and it shall be its duty to order the transfer of persons sentenced under the provisions of this article from the Colorado State Penitentiary to the state hospital, the reformatories, industrial school, or any other appropriate state

institution or facility, which the board determines will best effectuate the purposes of this article and the board shall have the further power to re-transfer such persons when necessary to provide treatment or proper custody, or to obtain current medical and psychiatric evaluations."

Was the trial court "without authority to sentence petitioner to the penitentiary"? C.R.S. '53, 39-19-5 (1), 1960 Perm. Cum. Supp., provides.

"Whenever a district court, after psychiatric examination of and report on a person convicted of any one or more of the crimes enumerated in section 39-19-1, shall be of the opinion that it would be to the best interests of justice to sentence such person under provisions of this article, he shall cause such person to be arraigned before him and sentenced to the Colorado state penitentiary until such time as the state board of parole shall review the case or transfer to the appropriate institution as provided in section 39-19-6."

In view of the language just quoted, we hold that the trial court acted properly in the premises, having express authority to sentence petitioner to the penitentiary.

And it should be noted that the statute is concerned with "the more efficient control, treatment and rehabilitation of persons convicted" of sex offenses. Certainly, control of the person must be assured before treatment and rehabilitation is undertaken. Control may require incarceration in the penitentiary. Nothing presented in this record indicates that the policy of the statute is not followed by the parole board.

Moreover, habeas corpus is not the remedy to rectify failure of the board to perform its duty under the statute. "With crystal clarity Justice Day delineated the circumscribed area in which a person convicted of crime could resort to habeas corpus as a remedy in the case of Freeman v. Tinsley, 135 Colo. 62, 308 P. (2d) 220. Such person may invoke the remedy if there is present a question of the court's jurisdiction of the person, or its jurisdiction

of the accusation made against the defendant, or where the question arises as to whether the judgment and sentence were within the prescribed statutory limits." *Lowe v. People,* 139 Colo. 578, 342 P. (2d) 631.

■ 3. "The judgment and sentence was not within statutory limitations in that the sentence is excessive." As we construe this ground for reversal Trueblood asserts that he is sentenced for life and for at least an additional day. No doubt, a sentence "for a period not exceeding life and not less than one day" is not as felicitous in expressing a sentence for a minimum of one day and a maximum of his natural life; but knowing the statute and its purport, and the evident intention of the trial judge to follow it, we hold that the sentence imposed does only what the statute permits.

4. "The sex offenders act confers judicial powers on the parole board and is, therefore, void."

■ The district court imposed the sentence; the sentence was from one day to life. What the parole board does as a matter of grace thereafter, pursuant to its statutory powers, does not involve the sentencing authority of the court.

"A parole is a mere matter of grace, favor, or privilege, and a prisoner is not entitled thereto as a matter of right." Pardons, 67 C.J.S. 604, § 20. The court is empowered "only to impose sentence under and in accord with the statute. * * * In so doing the court performs a ministerial function with discretion confined to the limits permitted by the statute." It may not "be said that the statute bestows a judicial function on the parole board." *In re Callahan's Petition,* 348 Mich. 77, 81 N.W. (2d) 669.

An act authorizing a board of penitentiary commissioners to parole convicts does not "interfere with the functions of the courts by taking from them power to fix or enforce the convict's punishment after the jury determines his guilt. The act, to the extent indicated, is but an exercise of the power of discipline possessed by the state, which it may exercise through the legislative de-

partment of the state, and confide to an instrumentality such as a board of prison commissioners." *Board of Prison Com'rs v. De Moss,* 157 Ky. 289, 163 S.W. 183.

5. "The application of the sex offenders act to petitioner is unlawful and resulted in a denial of the equal protection of the law." The differential in sentences that may be imposed under the two acts furnishes the basis for this contention.

██ Generally, statutes which prescribe different punishments for the same violations committed under the same circumstances by persons in like situations are void as violative of the equal protection of the laws. Equal treatment under the law is a right constitutionally afforded citizens.

Statutes similar to the one under consideration have been held not repugnant to the equal protection provision. *State v. Evans,* 73 Ida. 50, 245 P. (2d) 788; *Minnesota v. Probate Court,* 309 U.S. 270, 60 S. Ct. 523, 84 L. Ed. 744, 126 A.L.R. 530. In these decisions it is recognized that the state has the right "through its legislature, to classify persons * * *, based upon reasonable and natural distinctions, to accomplish the legitimate purposes of its police power," in fixing the differing penalties. *State v. Evans,* supra.

Judgment affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE PRINGLE concur.