## Commonwealth *v.* Dooley, Appellant.

520

Argued April 10, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*George T. Forssell, Jr.,* for appellant.

*Paul D. Shafer, Jr.,* Assistant District Attorney, with him *John Fuller,* Assistant District Attorney, for Commonwealth, appellee.

*James M. Carter* and *Marjorie Hanson Matson,* for amicus curiae.

OPINION BY ERVIN, P. J., June 16, 1967:

The appellant, John Dooley, pleaded guilty to a charge of assault with intent to ravish on November 12, 1964. He was not sentenced pursuant to the provisions of The Penal Code, June 24, 1939, P. L. 872, §722, 18 PS §4722. Dooley was sentenced instead on February 5, 1965 to a term of one day to life under the Barr-Walker Act, January 8, 1952, P. L. (1951) 1851, 19 PS §§1166-1174. The procedures under which that sentence was imposed were apparently consistent with

the then existing interpretation of that act. Dooley was subjected to psychiatric examination and a report based on that examination, plus matters not in the record of the criminal proceedings, was made by the Department of Welfare to the sentencing court on January 14, 1965. This report did not state that Dooley is "mentally ill" but stated that "He is a danger to the public if at large both from the standpoint of his fire setting, which is in itself a form of sexual deviation, and from the standpoint of his direct sexual aggressive behavior." This report was based upon an underlying psychological and psychiatric examination which incorporated evidentiary matter not adduced during the course of trial.

On April 28, 1966, the Court of Quarter Sessions of Crawford County vacated the Barr-Walker sentence imposed upon Dooley and ordered a new hearing to meet the due process requirements held requisite by the United States Court of Appeals for the Third Circuit in Barr-Walker proceedings: *United States ex rel. Gerchman v. Maroney*, 355 F. 2d 302 (discussed infra). This new hearing was held on July 11, 1966. No new examinations were made of Dooley, but the assistant superintendent of the Warren State Hospital, Dr. Urbaitis, was called. Dr. Urbaitis testified that the original report was prepared by other doctors under his supervision and that he also had some personal contact with Dooley during the course of the examination. Objection was made to any testimony from Dr. Urbaitis which was not the result of his own observation but this was overruled.

Dr. Urbaitis also testified that, in his opinion, Dooley was not "mentally ill" but that he did present a danger to society.

Another psychiatrist, Dr. Baker, a psychiatric consultant to the State Correctional Institution at Pittsburgh, also testified at the July 11 hearing. In Dr.

Baker's opinion, Dooley suffers from a "characterological problem" which the Pennsylvania State mental hospitals are apparently incapable of treating. Dr. Baker also stated that Dooley is not "a well man" but that he is psychotic at certain periods.

In addition to the two doctors, the testimony of arresting officer, Trooper Lococo, was admitted to show circumstances of the arrest and identification of Dooley for the offense of assault with intent to ravish.

On December 29, 1966, the Court of Quarter Sessions handed down an order which, as modified the following day, reinstated the original Barr-Walker sentence imposed February 5, 1965. In an opinion filed in support of this order, the court held that the Barr-Walker Act was constitutional and that the *Gerchman* case requires only that a representative of the Depart- and explain the meaning of the report required by the ment of Public Welfare appear to confront the accused Barr-Walker Act. Dooley now appeals from this judgment and order.

The American Civil Liberties Union has filed a brief amicus curiae.

We had occasion to go into this matter in *Com. ex rel. Gerchman v. Maroney*, 203 Pa. Superior Ct. 293, 201 A. 2d 319 (1964) (Allocatur refused 204 Pa. Superior Ct. xl.), where we held that the Barr-Walker Act was constitutional in spite of the present, and other, objections to it. We said: "This act does not create or describe a crime. It can only be employed after a person has been convicted of one of the crimes mentioned in the act. The defendant has all of the constitutional safeguards required, such as indictment, notice, jury trial, counsel of his own choice, confrontation of witnesses and the right of compulsory process to obtain witnesses, before his conviction of one of the specific crimes mentioned in the act. All that the Barr-Walker Act does is to provide an alternate type of

sentence. The legislature has the power and authority to provide any penalty for a felony so long as it is not cruel and unusual. It cannot be successfully argued that an act which provides for the study, attempted cure and rehabilitation of sex deviates is cruel or unusual punishment."

However, as has now become the rule rather than the exception, Gerchman took his arguments to the Federal courts. He filed a writ of habeas corpus in the District Court for the Eastern District of Pennsylvania. That Court denied his petition but on appeal the Court of Appeals for the Third Circuit reversed: *U. S. ex rel. Gerchman v. Maroney*, 355 F. 2d 302. That Court held that the proceedings under the Barr-Walker Act were criminal rather than civil and that they were a denial of due process because he was not afforded the "full panoply of the relevant protections which due process guarantees in state criminal proceedings." It refused to decide whether defendant had a right to a trial by jury upon this issue.

It was as a result of this decision that Judge THOMAS vacated the sentence which he had originally imposed and held a new hearing on July 11, 1966, which attempted to comply with the requirements laid down by the Circuit Court. The defendant insists that this hearing was also a violation of due process but because of reasons hereinafter set forth, we do not have to pass upon that question.

The *Gerchman* case did not go to the United States Supreme Court but in the meantime another case was proceeding through similar channels in Colorado.

One Francis Eddie Specht was convicted by a jury of the crime of assault on a child under sixteen under C.R.S. '53, 40-2-32, but was sentenced under the Colorado Sex Offenders Act, C.R.S. '53, 39-19-1 et seq., to a term of not less than one day nor more than life. Subsequently he filed a writ of habeas corpus in the

District Court of Jefferson County, Colorado, seeking release from custody on the ground that the sentencing court had committed procedural errors and that the Sex Offenders Act was unconstitutional. The District Court refused to issue the writ, which was affirmed by the Supreme Court of Colorado, *Specht v. Tinsley,* 153 Colo. 235, 385 P. 2d 423 (1963), on the ground that habeas corpus was not available to raise the procedural errors raised by the defendant, and that the constitutionality of the Sex Offenders Act had been upheld in *Trueblood v. Tinsley,* 148 Colo. 503, 366 P. 2d 655 (1961).

Specht then petitioned the District Court to vacate, set aside or correct its judgment and sentence. The District Court denied the petition and the Supreme Court of Colorado affirmed: *Specht v. People,* 156 Colo. 12, 396 P. 2d 838 (1964), which again upheld the constitutionality of the Sex Offenders Act.

Specht filed a petition for habeas corpus in United States District Court for the District of Colorado, which also denied relief, and that judgment was affirmed by the United States Court of Appeals for the Tenth Circuit, *Specht v. Patterson et al.,* 357 F. 2d 325 (1966), holding that the fact that the Colorado act did not provide for a hearing prior to the exercise of discretion by the court in determining to impose sentence under the Sex Offenders Act in lieu of the sentence authorized for the crime of which he had been convicted, did not render the act unconstitutional. The Court relied on *Williams v. New York,* 337 U.S. 241, 69 S. Ct. 1079, 93 L. ed. 1337 (1949), which had held that the Due Process Clause of the Fourteenth Amendment did not require a judge in a murder case to hold a hearing prior to his determination whether to sentence the convicted defendant to death or to life imprisonment. It also quoted from *State ex rel. Volden v. Haas,* 264 Wis. 127, 58 N.W. 2d 577 (1953), where

that Court had said that the petitioner was "afforded the right to be heard by himself and counsel, to be advised of the nature of the charge against him, to meet the witnesses face to face and compel the attendance of witnesses in his own behalf, and to a speedy trial by an impartial jury. But upon conviction, he is subject to whatever loss of liberty the legislature has prescribed for his crime. . . ."

The United States Supreme Court granted certiorari and on April 11, 1967 reversed the Circuit Court: *Specht v. Patterson,* 386 U.S. 605, 87 S. Ct. 1209, 18 L. ed. 2d 326, 35 U.S. Law Week 4340. The Supreme Court reaffirmed the rule of the *Williams* case, supra, but refused to apply it in the present situation. Mr. Justice DOUGLAS said: "We adhere to Williams v. New York, supra; but we decline the invitation to extend it to this radically different situation. These commitment proceedings whether denominated civil or criminal are subject both to the Equal Protection Clause of the Fourteenth Amendment as we held in Baxstrom v. Herold, 383 U.S. 107, and to the Due Process Clause. We hold that the requirements of due process were not satisfied here.

"The Sex Offenders Act does not make the commission of an enumerated crime the basis for sentencing. It makes one conviction the basis for commencing another proceeding under another Act to determine whether a person constitutes a threat of bodily harm to the public, or is an habitual offender and mentally ill. That is a new finding of fact (Vanderhoof v. People, 152 Colo. 147, 149, 380 P. 2d 902, 904) that was not an ingredient of the offense charged. The punishment under the second Act is criminal punishment even though it is designed not so much as retribution as it is to keep individuals from inflicting future harm. United States v. Brown, 381 U.S. 437, 458."

The Supreme Court cited with approval the language of the Third Circuit Court in *U. S. ex rel. Gerchman v. Maroney,* supra, as follows: "It is a separate criminal proceeding which may be invoked after conviction of one of the specified crimes. Petitioner therefore was entitled to a full judicial hearing before the magnified sentence was imposed. At such a hearing the requirements of due process cannot be satisfied by partial or niggardly procedural protections. A defendant in such a proceeding is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial, including the right to confront and cross-examine the witnesses against him." and stated that it agreed with that view.

On the other hand, the Supreme Court compared the present situation to cases under recidivist statutes where an habitual criminal issue is "a distinct issue" upon which a defendant "must receive reasonable notice and an opportunity to be heard."

The Supreme Court set forth the procedural safeguards to which a criminal defendant is entitled, as follows: "Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed."

After finding that none of those procedural safeguards were present in the Colorado Sex Offenders Act, it held that that act was "deficient in due process as measured by the requirements of the Fourteenth Amendment."

While we cannot bring ourselves to believe that the legislature of this Commonwealth intended it to be a criminal act to be a sexual psychopath, and while we

can see no valid distinction between the situation in this case and that of any other case where a trial judge has the choice of alternate sentences for a defendant who has already been convicted following a trial which met all the requirements of due process, nevertheless we are bound by the decision of the United States Supreme Court.

We have compared the critical features of the Pennsylvania statute with those of the Colorado Act and find them substantially identical. Therefore, since the Colorado Act[1] is "deficient in due process as measured

---

[1] Sections 39-19-1 and 39-19-5(1) of the Colorado Act have been amended as follows: "39-19-1. Indeterminate sentences to institutions. For the better administration of justice and the more efficient control, treatment, and rehabilitation of persons *hereafter* convicted of the crimes of indecent liberties, incest, assault with intent to commit unnatural carnal copulation, unnatural carnal copulation, assault with intent to commit rape, or rape, if the district court is of the opinion that any such person *lacks the power to control his sexual impulses has criminal propensities toward the commission of sex offenses* and, if at large, constitutes a threat of bodily harm to members of the public, [or is an habitual offender and mentally ill,] the district court in lieu of the sentence now provided by law, for each such crime, may sentence such person to a state institution for an indeterminate term having a minimum of one day and a maximum of his natural life, *such sentence to be imposed only after a hearing is had in accordance with the provisions of section 39-19-5(1)*."

"39-19-5. Sentence—cost—place of confinement. (1) Whenever a district court, after psychiatric examination of and report on a person convicted of any one or more of the crimes enumerated in section 39-19-1, shall be of the opinion that it would be to the best interests of justice to sentence such person under the provisions of this article, he shall [cause such person to be arraigned before him and sentenced to the Colorado state penitentiary until such time as the state board of parole shall review the case or transfer to the appropriate institution as provided in section 39-19-6.] *Initiate a hearing for the purpose of determining whether a person so convicted is within the class described in 39-19-1 of this act. Said hearing shall be initiated by written notice to the defendant and his counsel, such notice to state the nature and purpose of*

by the requirements of the Fourteenth Amendment," we have no recourse except to declare that the Barr-Walker Act is similarly deficient. Reluctantly we must overrule *Com. ex rel. Gerchman v. Maroney,* supra, and *Com. ex rel. Hoffman v. Maroney,* 203 Pa. Superior Ct. 303, 201 A. 2d 263.

It follows that if the act itself is unconstitutional, the hearing held on July 11, 1966 was a nullity and it becomes unnecessary to discuss whether or not it was defective in any respect.

The order of the court below is reversed and the case is remanded to the court below for sentence in accordance with the provisions of The Penal Code.

WRIGHT, J., concurs in the result.

---

*the proceeding and the date thereof, which date shall not be less than twenty days after service of said notice. At such hearing, evidence shall be received to determine whether the defendant lacks the power to control his sexual impulses, has criminal propensities toward the commission of sex offenses and, if at large, constitutes a threat of bodily harm to members of the public. At such hearing, the defendant shall have all the rights of a defendant in a criminal trial. Upon the conclusion of such hearing, and before imposing any sentence under this article, the court, in cases tried to the court, shall make written findings of those facts that establish that the defendant lacks the power to control his sexual impulses, has criminal propensities toward the commission of sex offenses and, if at large, constitutes a threat of bodily harm. If the court imposes a sentence under this article, it shall sentence the defendant to the Colorado State Penitentiary until such time as the state board of parole shall review the case or transfer the defendant to the appropriate institution as provided in section 39-19-6."*

Similar amendments to the Barr-Walker Act would probably correct the deficiency now existing.